Haywood, J.
On tlie 21st of June, 1819, Smith sued Christopher Stump, and declared against him as an indorser of a note made by Cox and John Stump, averring demand and notice. The defendant pleaded non-assumpsit, and issue was joined. The death of the defendant was suggested in the record soon afterwards, and thereupon an entry was made upon the docket in these words, “ Motion to revive.” Guardians were appointed by the Court for the minor heirs to defend this action, and a scire facias was ordered to issue against them. A scire facias issued accordingly from July term, 1821, stating that Christopher Stump had died intestate, and that no letters of administration have been granted upon his estate, and a suggestion that lands have descended to the heirs, and calling upon them by name to show cause why the said suit should not be revived against them, and why the said plaintiff should not have judgment and execution against the estate of the said Christopher Stump. This scire facias being served upon the heirs, they pleaded “ that the plaintiff, his action aforesaid, ought not to revive, have, or maintain against these defendants, because they say that they had not, at the time of issuing out the scire facias in this cause, nor at any time before or since, have they any lands, tenements, or hereditaments by descent, and as heirs-at-law of their deceased father, Christopher Stump, in the scire facias mentioned, and this they are ready to verify. Wherefore they pray judgment, if, as heirs, &c. they ought to be charged with the debt, &c.” Demurrer and joinder. The Court adjudged the plea good to bar the plaintiff’s action, and overruled the demurrer, and that defendants go hence without day and recover their costs against the plaintiff. And the cause was adjourned to this Court.
This scire facias having for its object to proceed to judgment and execution against the heirs, upon the suit depending against their ancestor at the *224 time of his death, will not be vitiated by the term “ revived,” which is untech-nically used therein. A defendant, if he is not the heir of the deceased, as stated in the scire facias to be, may plead that he is not heir, and the writ will abate. If the heir say nothing, and thereby hinder the plaintiff from proving the assets descended, and will not himself specify them, then judgment shgll be entered de bonis propriis. If he will not specify the assets, but plead generally nothing by descent, and it be proved that he hath assets to a certain amount, he shall he charged with assets to that amount, and in ancient .strictness with the whole debt; Bac. Ab. heir and ancestor, H.; or the plaintiff may reply that he had assets by descent before the writ purchased. And if that be proved, though he aliened them before the writ issued, he shall be charged to the value of the lands so alienated. 01789, ch. 29, § 3. .Now if upon nil dicit or the plea of riens per descent, judgment shall be entered for the assets descended, and the same have been aliened before the date of the writ, the heir will always say nothing or plead nothing by descent, for then he cannot be made liable personally; whereas by the Act of 1789, ch. 29, § 3, he, by alienation of the assets descended, is made personally liable to the amount thereof. Say that the judgment is to be entered against the lands descended; this description covers the lands descended and alienated before action commenced or process sued out against the heir, and will reach lands the value of which the heir has paid to the creditors of his ancestor, which thereby became no longer liable to the debts of his ancestor. And, moreover, in case of such judgment and writ of execution correspondent to it, the sheriff, in his discretion, would sell whatever- other lands fell, in his opinion, under the description of lands descended, and for every sale would make a lawsuit. Whenever judgment is given to be levied of the lands, these lands are specified in the plea,in the judgment, and in the execution; 2 Plowden, 439 ; 2 Saund. 7, note 4; 2 Roll’s Abridgment, 71; 1 Strange, 665 ; and there is no discretion left in the sheriff; he being, with respect to the sale of lands, not exposed to an action for illegally selling, as he would be in the case of personal property, would be perfectly indifferent in most instances as to the lands he might sell. Such authority cannot be given without great inconvenience, and is not warranted by principle, which rather makes the defendant liable personally than commit such unreasonable and unnecessary powers to the sheriff, when he has no means of trying conclusively any of the facts which render the lands descended not liable to the debts of the ancestor. It may be said that alienation, or payment to the value by the heir, may be inquired into by a scire facias taken out after judgment against the lands descended. What, two judgments P the latter against the heir personally, the former against the lánds descended, including the lands alienated or paid for. Two actions instead of one, and sometimes three instead of one ? First-, that upon which judgment is obtained against *225 the creditor, the scire facias and general judgment against the heir of all the assets; and lastly, judgment against the heir personally upon a scire facias, charging alienation before the action brought; and in case of sale of lands descended, the value of which the heir has paid, by satisfying debts due from the ancestor, very probably no remedy at all; for if the heir bring ejectment, and on trial prove debts paid to the value, the purchaser will show that he purchased under an execution against all the lands descended, and that these were the lands descended, and so within the very words of the authority given to the sheriff. Would the law defeat what had thus been done under its own express directions ? Why not do the whole at once, as by the Act of 3 and 4 W. and M. ch. 14 it is done ? Why a new scire facias to subject the heir personally, when it may be as well done upon the first scire facias, and why make a new precedent and new rule of practice instead of following those which we find made to our hands ? The Act of 1789, ch. 29, § 3, being nearly in the same words as the Act of 3 and 4 W. and M. ch. 14, and that being in amendment of the law in some defective instances, both of them show what the law is which they amend, and that it is a law which did not require nor tolerate a general judgment of assets which descended. Under the 3 and 4 of W. and M. to the plea of nothing by descent, the plaintiff replied “ that he had lands by descent before the writ sued out against him,” and upon this replication issue was taken; and if the jury found lands descended they assessed the value, and the Court gave judgment to recover the value; and why not do the same here, and settle the whole business at once ? It can only be deemed impracticable by first entertaining the opinion that there must be a judgment against the assets descended, which judgment is no part of the law amended by the Act of 3 and 4 W. and M. ch. 14, or by our Act of 1789, ch. 29, § 3; and if introduced at all, is without precedent on the law so amended, and against the principles of that law which subjects either certain lands specially described or the heir personally, not lands descended generally ; by such introduction we shall make, not follow, the law as laid down. The Act of 1784, ch. 11, § 2, directs the scire facias against the heirs or devi-sees to show cause why execution should not issue against the real estate, and if judgment shall pass thereon execution may issue against the real estate in the hands of such heirs or devisees; that is to say, in his hands at the time of judgment rendered against the executor, which by this law is supposed to bind the same; or which he had at the time of process sued out against the heir upon or after such judgment, by the Act of 1789, ch. 59, § 3. A judgment generally of all the lands which descended to the heir will violate all the provisions of these Acts; it will reach other lands than those which were in the hands of the heir at the time of judgment against the executor, and also than those which were in his hands at the time of process sued out against him upon and after such judgment, *226 which may not be till long after the judgment. 'And will cover all the lands alienated by the heir, paid for by him or sold by execution between the death of the ancestor and the scire facias against the heir, and will render all lands unalienable which descend to the heir, though by the Act of 1789, ch. 59, § 3, it is evident that the power of alienation subsists till process sued out against the heir; and though it is extremely questionable whether, upon the present scire facias, the power of alienation is restrained sooner than it would be by a judgment against the executors .and scire facias upon that against the heirs ; that is to say, sooner than a judgment upon this action, in which he comes in place of the executor, by 1809, ch. 121, § 3; if so, then, surely a judgment against all assets descended would reach all lands legally alienated before the time that a judgment upon this scire facias could legally bind them, which is only from the time of judgment upon it. If such judgment cannot be given, then the effect of the plea of nothing by descent, pleaded by an heir, is the same as it is in the law of England, — to discharge the heir entirely if true, and if not true to subject him to the value of the lands which have descended and remain in his hands unalienated on the day of suing out the process. The plea to this scire facias, as a plea in abatement, I think is not a good plea, and this cause should be remanded to be proceeded on upon new pleas in chief put in by the defendants, and upon a plea of nothing by descent found for the defendants that they should be discharged from the action with costs, to be paid by the plaintiff. That there ought not to be two scire facias, one to make parties and another for judgment, and much less a third scire facias to have judgment against the heir personally for lands alienated. My opinion is that the scire facias should call upon the heirs to show cause why the plaintiff should not proceed against the heirs in the action which depended against the ancestor at the time of his death, to the trial of the issues therein joined, and to verdict and judgment in respect of the real estate which descended to the heirs, in the same manner as he might have proceeded against the administrator in respect of the personal estate, had there been any such administrator.
Note. — The opinion delivered in this ease is only that of Judge Haywood, except that the plea filed was insufficient as a plea in abatement upon which all the judges agreed. Brown and Whyte, JJ. agreed that the judgment should be given for the lands descended generally. This latter fact seems to have escaped the notice of Mr. Heiskell, who, in his Digest, page 53, cites this case as in conflict with 7 Y. 467, on this point, when it is in accord. That the judgment should be for specific lands is only the opinion of Haywood, J. —Ed.